# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONNA ELLIS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 14-cv-564-CVE-TLW ) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff, Donna Ellis, seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **REVERSED AND REMANDED FOR RECONSIDERATION**.

## INTRODUCTION

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical

impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if

2

supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 51-year old female, filed applications for Title XVI benefits on February 11, 2011, and for Title II disabled widow's benefits on February 23, 2011, alleging in both a disability onset date of December 31, 2009. (R. 188-203). Plaintiff claimed that she was unable to work due to nerve damage to hands and arms, back and neck pain, and arthritis in knees and elbows. (R. 219). Plaintiff's claims for benefits were denied initially on April 6, 2011, and on reconsideration on June 23, 2011. (R.83-90, 96-102). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on April 25, 2013. (R. 52-74). The ALJ issued a decision on June 3, 2013,[1] denying benefits. (R. 21-30). The Appeals Council denied review, and plaintiff appealed. (R. 1-3; dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff is the unmarried widow of a deceased insured worker, that she has attained the age of 50 and has met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act. (R. 23). At step one, the ALJ found plaintiff has not engaged in substantial gainful activity since her application date. (R. 24). At step two, he determined that plaintiff has severe impairments of: "carpal tunnel syndrome, chronic neck and back pain, lumbago, mitral stenosis, neuropathy, chronic obstructive pulmonary disorder, asthma and dyspnea upon exertion." Id.

At step three, the ALJ found that plaintiff's impairments do not meet or medically equal a listing. (R. 24-25).

---

[1] The ALJ's June 3, 2013, Decision is an Amended Decision. (R. 21-30). His previous decision dated May 15, 2013, erroneously addressed a Title II application for disability and disability insurance benefits. (R. 21). The Amended Decision addresses the Title II application for disabled widow's benefits as well as the Title XVI application for supplemental security income.

The ALJ then set forth his RFC assessment as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would require a sit/stand option, which is defined as a temporary change in position from sitting to standing and vice versa without leaving the workstation, and no more than one change of position every thirty minutes. The claimant can frequently but not constantly use her hands bilaterally. The claimant should have no concentrated exposure to odors, dusts, chemicals or poor ventilation.

R. (25).

The ALJ acknowledged that he had to consider all plaintiff's alleged symptoms and determine the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p. (R. 25). The ALJ confirmed that he understood the factors he must consider in addition to the objective medical evidence when assessing plaintiff's credibility. (R. 26).

The ALJ then offered the following summary of plaintiff's allegations regarding her functional limitations and restrictions due to pain and other symptoms:

> The claimant alleges that she suffers from carpal tunnel syndrome, chronic neck and back pain, lumbago, mitral stenosis, neuropathy, chronic obstructive pulmonary disorder, asthma and dyspnea upon exertion. As a result, the claimant alleges she experiences pain, cannot work and has difficulty sleeping (Ex. 7E). The claimant also alleges she can only walk a block or two before needing to stop and rest (Ex. 7E). Additionally, the claimant alleges she has difficulty lifting, squatting, bending, standing, reaching, sitting, kneeling, climbing stairs, completing tasks, concentrating and using her hands (Ex. 7E). Despite these allegations, the claimant attends to her personal hygiene and prepares simple meals (Ex. 7E). The claimant also washes dishes and makes beds (Ex. 7E). Additionally, the claimant uses public transportation, shops and pays bills (Ex. 7E). Here, the claimant has described daily activities that are inconsistent with the claimant's allegations of disabling symptoms and limitations, which weakens her credibility.

Id. Exhibit 7E is the portion of the administrative record that contains plaintiff's hand-written responses on the forms provided by the administration which contain questions regarding how

4

the claimant's illnesses, injuries, or conditions limit his or her ability to work and perform daily activities. (R. 26, 248-255).

The ALJ said:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functional capacity. I note that it is the claimant's responsibility to put forth evidence showing she had an impairment and how severe it is during the period she alleges disability (20 CFR 404.1512 and 416.912). I have the authority to make a determination that the claimant's impairments are not incapacitating to the extent alleged. Although the subjective element of incapacity is an important consideration in determining disability, I have discretion to evaluate credibility and to arrive at an independent judgment, in light of medical findings and evidence regarding the true extent of the incapacity alleged by the claimant. The issue of credibility in this case cannot be discussed analytically in absolute terms, but must be measured by degree. The claimant testified, and understandably may honestly believe that her impairments are disabling. However, it is the duty of the undersigned to accurately determine the degree of her impairments based upon the totality of all of the other evidence of record. I have evaluated the claimant's subjective complaints and other allegations in accordance with 20 CFR 404.1529 and 416.929; SSR 96-4p; and SSR 96-7-p. The claimant's allegations are found to be partially credible.

(R. 26-27).

After the ALJ set forth an abbreviated summary of the medical evidence, he said:

> I have given the claimant the benefit of the doubt regarding the claimant's symptoms resulting from her carpal tunnel syndrome, chronic neck and back pain, lumbago, mitral stenosis, neuropathy, chronic objective pulmonary disorder, asthma and dyspnea upon exertion, and the residual functional capacity indicated above adequately accounts for these symptoms.

(R. 27-28).

The ALJ then said he gave the opinion evidence from Leela Reddy, M.D., and Manda Waldrep, M.D., State Agency consultants who concluded plaintiff's impairments were non-severe, little weight "as there was some objective evidence that suggested the claimant had severe physical impairments." (R. 28, 292-293).

The ALJ gave "significant weight" to the opinion of Gordon Strom, M.D., an examining consultant. (R. 28).[2]

The ALJ proceeded to step four where he determined that plaintiff could not perform her past relevant work as a day worker, cleaner and packager machine tender. Id. Based upon the testimony of a vocational expert ("VE"), the ALJ found at step five that, considering plaintiff's age, education, work experience, and RFC, plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 29). He found, therefore, that plaintiff is not disabled as defined in the Social Security Act from December 31, 2009, through the date of his decision. (R. 29-30).

**Medical evidence**

When plaintiff completed the forms for her applications for disability benefits on March 3, 2011, she stated that she was not under any medical treatment and she was not taking medication. (R. 234, 239).[3] The administrative record contains a report from Agape House World-Wide Ministries, Inc., dated February 19, 2011, that indicates plaintiff complained of "pain in neck, lower back, hips, arms, [and] shoulder blades," and reported she had last taken Loratab in November 2010. (R. 285). Plaintiff was assessed with arthritis, multiple joints, UE

---

[2] The ALJ expressly rejected the portion of Dr. Strom's opinion in which he used the term "at least sedentary" in describing plaintiff's work abilities. (R. 28). The ALJ explained that the RFC is based on the "most" the claimant is capable of performing, which he assessed as light exertional level with additional requirements of a sit/stand option and frequent but not constant use of her hands and no concentrated exposure to odors, dusts, chemicals, or poor ventilation. Id.
[3] She said she was "seeing a doctor 21 March 2011," which is the date she was scheduled to be examined by a consultant for the Social Security Administration. (R. 234, 239).

(upper extremities), LE (lower extremities), back, legs; and anxiety. Id. The physician prescribed Ultram and Busper. Id.

The Disability Determination Services for the Social Security administration scheduled plaintiff for a consultative medical examination by Gordon B. Strom, Jr., M.D., FACP, on March 21, 2011. (R. 287-291). Dr. Strom reported that plaintiff described chronic back discomfort, tingling in both arms and hands that, according to her Workman's Compensation evaluation, suggested she had nerve damage in her hands from manipulating small objects. (R. 287). Plaintiff told Dr. Strom that she was advised to have a job that results in less repetitive motion and was not given a disability based on her complaint. Id. She said she could walk one block, that she is right handed and that she has difficulty standing because of discomfort. Id. She described shortness of breath but Dr. Strom noted that she smoked at least one half pack of cigarettes per day. Id. Dr. Strom conducted a physical examination which revealed full flexion and extension of plaintiff's neck despite her complaint of pain bilaterally over the base of her neck. (R. 288). She could flex and extend her thoracic spine and lumbar spine. Id. She could extend her arms above her head, flex her elbows, rotate her wrists and had adequate grip strength. Id. She did complain of dysesthesia (abnormal sensation) but had no sensory loss. Id. She had adequate ability to manipulate small objects with her digits. Id. Her hip flexion was to ninety degrees, though she complained of pain with the maneuver. Id. She had no obvious atrophy of her legs, and her arms appeared to be symmetrical with no obvious atrophy. Id. She could flex and extend both ankles, dorsiflex and planter flex both ankles. Id. She could ambulate in the clinic without use of assistive devices. Id. The neurologic exam did not reveal an obvious abnormality and the motor exam appeared to be normal with adequate muscle strength and reflexes. Id.

Because plaintiff complained of right wrist pain and low back pain, Dr. Strom reviewed x-rays taken that day of plaintiff's right wrist, which revealed no abnormality, and lumbar spine which revealed minimal levoscoliosis with minimal multilevel discogenic degenerative changes without acute lumbar spine abnormality. Id. Dr. Strom summarized his findings as follows:

> In summary, Donna Ellis is a patient with the complaint of dysesthesia involving her hands associated with a job that requires repetitive motion. She also complains of cervical pain and back pain. She has extremely poor dentition and would certainly benefit from dental care.

(R. 289).

Dr. Strom's impression was that plaintiff likely had some degenerative changes and likely had a neuropathy associated with repetitive motion, but was capable of at least a sedentary type of occupation. Id.

Dr. Strom's recommendations were as follows:

> Her examination did not reveal her inability to do work related activity. She could stand, move about the clinic, lift light objects, hear and speak. The level of pain that she describes is not apparent on exam. Flexion and extension of her back appeared to be normal. Her gait appeared to be normal. She had no atrophy, motor or sensory loss at the time of the exam and no evidence of bony destruction of any joint. I did not detect any atrophy of either extremity. She could squat, rise from a seated position, hop and stand on either leg. She did not have contractures or deformity. Her grip strength appeared to be adequate and there was no disorganization of motor function. She did ambulate in the clinic without the use of assistive devises.

Id.

On June 17, 2011, plaintiff was seen at Primary Care Associates of Paris, Texas, for a very painful, red and swollen spot on her nose, and was diagnosed with a staph infection. (R. 309, 312-313). Her "Active Problem list" included Carpal Tunnel Syndrome, tobacco use disorder, and Asthma, NOS. (R. 309). She also complained of hot flashes. Id. She reported pain and tingling in her hands and stated she had nerve damage in her wrist and arms. Id. She gave a

history of asthma but said she had never had medication for it. Id. She said she sometimes "got winded" but reported no shortness of breath, persistent cough or wheezing. Id.

On June 29, 2011, a nerve conduction study and pulmonary function test were performed. (R. 307-308, 316-324). The nerve conduction study suggested neuropathy involving the left median nerve and left ulnar neuropathy at the wrist. (R. 319-320). The right median nerve conduction study was within normal limits with suggestive right ulnar nerve neuropathy at the wrist. Id. The pulmonary function test was summarized as follows:

> Although there is moderate airway obstruction and a diffusion defect suggesting emphysema, the absence of overinflation indicates a concurrent restrictive process which may account for the diffusion defect. The response to bronchodilators indicates a reversible component. In view of the severity of the diffusion defect, studies with exercise would be helpful to evaluate the presence of hypoxemia.

(R. 322). Plaintiff was prescribed a nebulizer compressor for home use, and Albuterol and ipratroplum solution for use in the nebulizer. (R. 326, 328). For her pain, plaintiff was prescribed Mobic, Tramadol, and Butrans Patches. (R. 329).

On August 15, 2011, plaintiff underwent a Carotid Artery Study. (R. 314-315). That study revealed Mitral stenosis. (R. 296). Her tests and studies results were discussed with her on August 19, 2011. (R. 296-297). She was advised to start Vitamin B6 and her pain medications were refilled. Id.

Plaintiff was seen for pain management by Iftegar Syed, M.D., on November 1, 2011. (R. 336-338). Plaintiff complained of neck, back, wrist, and hand pain. Id. She said Hydrocodone and Oxycodone were the only medications that have helped and allowed her to function through the day with little pain. Id. She described the pain as a constant dull ache which can be throbbing and sharp and is aggravated with use of her hands and by back movements. Id. She reported that she exercises at home regularly and is able to do house work and her activities of daily living. Id. Examination revealed mild tenderness over the wrists bilaterally and over the lumbar spine in the

midline. Id. Plaintiff had full range of motion in her extremities and cervical and lumbar spine. Id. Dr. Syed instructed plaintiff on various pain generators, and discussed cognitive strategies for managing symptoms, along with the benefits of a regular exercise program for managing chronic pain. Id. He started plaintiff on Cymbalta and Butrans 5 mcg patch and also injected her right wrist. Dr. Syed saw plaintiff again on December 1, 2011. (R. 333-336). Plaintiff reported that there was no improvement with the wrist injection, that Butrans was too expensive, and Cymbalta did not help with pain. Id. Dr. Syed noted that plaintiff had made three appointments and failed to keep them because she thought she might get more injections and did not want that option. Id. Upon examination, plaintiff exhibited no pain behaviors. Id. The doctor gave her some sample patches and a new prescription for Lyrica. Id.

On December 5, 2011, plaintiff was seen by Ernest S. White, M.D., at Primary Care Associates for a regular checkup. (R. 342-344). Plaintiff continued to complain of pain in her hands and wrists. Id. She asserted that the injection in her right wrist was very painful and refused to let Dr. Syed inject her other wrist. (R. 342). She said he had prescribed Neurontin, but that she was already taking that medicine. She did not take the Cymbalta he prescribed because she had "no idea why he prescribed this for her." Id. She reported a pharmacist told her the flexor patch Dr. Syed had given her was a muscle relaxer so she did not use the patch. Id. She complained that her hands and wrists were constantly painful and wanted something for the pain. Id. She reported she was using the nebulizer treatments. Id. Examination revealed mild shortness of breath and dyspnea on exertion minimal. Id. She had no persistent cough, chest congestion or chest pain. Id. She was still using tobacco. Id. Her prescriptions were refilled, except for Tramadol, and she was given a sample of Conzip. Id. She was encouraged to try Cymbalta, because it is actually used for pain more than depression, and to talk to her pharmacist again about the patch. Id.

X-rays on April 3, 2012 showed degenerative disc disease at C4/5, C5/6 and C6/7 including moderate-severe disc height loss and endplate spurring. (R. 331).

Plaintiff was seen by Dr. White again on March 5, 2013, and was complaining of severe pain in the right side of her neck and shoulder. (R. 348-350). She advised she had always had some pain in her neck, but the sharp pain started about three days before the examination. Id. She was still using her nebulizer and was taking tramadol. Id. She was started on meloxicam and flexeril. Id. [4]

**Plaintiff's Allegation of Error**

Plaintiff asserts one allegation of error:

> Here, the ALJ found Ellis credible only to the extent that her testimony supported the ALJ's predetermined RFC, yet the decision fails to fully disclose the reasons for that finding. The credibility analysis is therefore defective, and remand is required for further review.

(Dkt. 18 at 8).

Defendant responds that the ALJ reasonably found plaintiff's allegations were not entirely credible and that he adequately explained the supporting reasons for that determination. (Dkt. 21 at 6-9).

## ANALYSIS

Credibility determinations by the trier of fact are given great deference. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495, 1499 (10th Cir. 1992). See White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002) ("We have emphasized that credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence.") (citing Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995)). The factors the ALJ should consider in evaluating subjective allegations of pain are: (1)

---

[4] The administrative record contains a report from Dr. White dated June 3, 2013, the same day the ALJ's Decision was issued. (R. 30, 351-355). Since that report was not part of the record before the ALJ, it is not included in this statement of the medical record.

whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. Kepler, 68 F.3d at 390 (citing Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987)).[5] In evaluating credibility, an ALJ must give specific reasons for his findings that are closely linked to substantial evidence. Kepler, 68 F.3d at 391. However, Kepler does not require a formalistic factor-by factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

In this case, Plaintiff complains that the ALJ offered only one paragraph to "discredit Ellis, whose testimony was never discussed." (Dkt. 18 at 8). She asserts that the ALJ failed to identify any particular objective medical findings that provide a basis for not adopting plaintiff's testimony, "particularly when other studies confirmed moderate-to-severe cervical spine abnormalities and neuropathy of the upper extremities." (Dkt. 18 at 9). She claims that the ALJ did not state "*why* plaintiff was not credible in this case" and that he used only "standard boilerplate language" as a substitute for specific reasons for his credibility determination. (Dkt. 18 at 10).[6] Plaintiff acknowledges that the ALJ followed his credibility "conclusion" with a synopsis of the medical evidence, but she contends that he failed to "identify the complaints that were discredited and, therefore [did] not explain how it supported the ALJ's conclusion." (Dkt. 18 at 10).

---

[5] These are known as the "Luna factors."

[6] See White, 287 F.3d at 909 (boilerplate recitation of law cannot substitute for proper evaluation of subjective complaints of pain). See also Keyes-Zachary, 695 F.3d at 1170 (boilerplate language is "problematic only when it appears 'in the absence of a more thorough analysis.'") (quoting Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004)).

In this case, the structure of the ALJ's decision introduces some difficulty in reviewing his credibility determination because he apparently incorporated his review of the medical evidence into his credibility evaluation. (R. 26-28). A proper credibility analysis can be achieved by citing relevant credibility factors and identifying evidence related to those factors to support the credibility assessment. See Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 209). However, the ALJ's conclusions regarding the claimant's credibility must be tethered to specific evidence in support of his conclusions. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1170 (10th Cir. 2012).

Contrary to plaintiff's allegation, the ALJ did not "discredit" plaintiff or find that plaintiff was "not credible." (Dkt. 18 at 8-9). Rather, the ALJ found plaintiff was "partially credible." (R. 27). He gave plaintiff "the benefit of the doubt regarding her symptoms resulting from her carpal tunnel syndrome, chronic neck and back pain, lumbago, mitral stenosis, neuropathy, chronic obstructive pulmonary disorder, asthma and dyspnea upon exertion," despite the opinions of the two state agency consultants that plaintiff's impairments were not severe. (R. 28). Indeed, his recitation of the medical evidence supports his conclusion that plaintiff was diagnosed with and treated for pain associated with those impairments, and that they qualified as medically determinable severe impairments. Id.

However, the ALJ failed to give specific reasons for finding plaintiff only partially credible with regard to her claim that the pain caused by those medically determinable severe impairments is so severe as to be disabling. He provided no explanation of how he applied the Luna criteria when he compared plaintiff's claims of disabling pain to the medical evidence. A finding that subjective complaints are inconsistent with objective medical evidence is a legitimate reason that supports an adverse credibility assessment. Newbold v. Colvin, 718 F.3d 1257, 1267 (10th Cir. 2013). In making such a finding, however, the ALJ must closely and

affirmatively link the credibility conclusions to the evidence. Hardman, 362 F.3d at 679 (ALJ must explain why specific evidence relevant to each Luna factor led him to conclude claimant's subjective complaints are not credible). Here, the ALJ's recitation of the medical evidence, without comment as to how that evidence is inconsistent with plaintiff's claim of disabling pain is, therefore, insufficient.

The Commissioner has pointed to specific portions of plaintiff's treatment records that are inconsistent with her complaints of disabling pain. (Dkt. 21 at 2-4, 7-9). Indeed, the undersigned notes that there is ample evidence in the medical record that plaintiff did not fully comply with recommendations for management of her pain, and that her range of motion tests and mobility observations by physicians belied her complaints that she could not use her hands or arms. (R. 333-338, 342-344).[7] However, those findings were not articulated by the ALJ. He pointed to the medical evidence that he relied upon to give plaintiff the benefit of the doubt that her impairments are severe but he did not link his conclusion to substantial record evidence that the pain caused by those impairments was not as severe as plaintiff alleged. See Kepler, 68 F.3d at 391 (citing Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ must articulate specific reasons for questioning the claimant's credibility where subjective pain testimony is critical.) (internal quotes omitted). The court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the decision itself. See Haga v. Astrue, 492 F.3d 1205, 1207-08 (10th Cir. 2007).

Plaintiff also complains that the ALJ committed reversible error because he "never mentioned" her hearing testimony in his written decision. (Dkt. 18, at 11; dkt. 23 at 1). Plaintiff

---

[7] The Commissioner relies upon Dr. Strom's opinion to demonstrate that the medical evidence was inconsistent with plaintiff's allegations of severe pain. (Dkt. 21 at 7). Dr. Strom's examination was conducted before plaintiff's nerve conduction studies, pulmonary function study and cervical spine x-rays were ordered and reviewed by her treating physicians, Dr. White, Dr. Syed and their associates.

posits that it is impossible to tell which allegations the ALJ considered "partially credible" when the ALJ "was unaware of those allegations in the first place." (Dkt. 18 at 11). Plaintiff does not allege, nor is there any evidence that the ALJ was not present at the hearing, or that he did not listen to her testimony. Apparently, plaintiff assumes that the ALJ did not consider her testimony because, in his written decision, he used her statements that accompanied her applications for benefits instead of her testimony to describe her allegations of disabling impairments.

The regulations require that a claimant's statements regarding impairments, restrictions, daily activities, efforts to work, or any other relevant statements a claimant makes to medical sources or to the administration during interviews, on applications, in letters, and in testimony in administrative proceedings will be considered as evidence in evaluating symptoms, including pain. See 20 C.F.R. 404.1512(3), 1529(a); 416.912(3), 929(a). Because plaintiff's testimony at the hearing indicates her condition worsened after she applied for disability benefits, the ALJ should clarify how those allegations impact his credibility evaluation and subsequent RFC determination. See Kepler, 68 F.3d at 391, (citing Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 261 (2nd Cir. 1988) ("failure to make credibility findings regarding … critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support her conclusion that claimant is not under a disability.")). Because the undersigned recommends this case be reversed and remanded for specific findings regarding plaintiff's credibility with links to the evidence to support those findings, the ALJ will necessarily need to address plaintiff's testimony. This will also afford him an opportunity to identify the portions of her testimony that are inconsistent with her claims of pain so severe as to prevent her from engaging in substantial gainful activity.

It appears that the ALJ relied upon Dr. Strom's opinion that plaintiff could perform work activities to support his RFC assessment. (R. 28). However, the ALJ did not discuss how he

weighed the evidence from plaintiff's treating sources and plaintiff's testimony at the hearing in making that assessment. In formulating a claimant's RFC, an ALJ must explain the basis for his assessment and discuss the uncontroverted evidence he chooses not to rely upon, as well as significant probative evidence he rejects. See Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). Because the ALJ's decision is not sufficiently specific to inform subsequent reviewers of how the ALJ tied his credibility finding to the evidence in the record, his RFC determination is infirm. "Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." Poppa v. Astrue, 569 F.3d 1167, 1170 (10th Cir. 2009). The undersigned cannot find, therefore, that the ALJ's decision is based upon substantial evidence and recommends reversal on that basis.

The undersigned recommends the District Court reject plaintiff's argument that the ALJ's credibility analysis inappropriately "did not occur until *after* having already developed a light RFC" and, as such, is grounds for reversal. (Dkt. 18 at 11). The ALJ's written decision is apparently in accord with the standard decision template which sets forth the RFC finding followed by a discussion of the factors that go into making that finding.

## RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS that the Commissioner's decision in this case be **REVERSED AND REMANDED FOR RECONSIDERATION**. Upon remand, the ALJ should make express findings regarding his evaluation of plaintiff's partial credibility with reference to relevant evidence as appropriate and set forth a logical explanation of the effects of the symptoms, including pain, on her residual functional capacity.

**OBJECTION**

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by October 16, 2015.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. See also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 2nd day of October, 2015.

_____
T. Lane Wilson
United States Magistrate Judge